IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Pedro Julio Burgos-González,<br>Plaintiff,<br><br>v.<br><br>Fresenius Kidney Care of Aguadilla ET AL,<br>Defendants. | CIVIL NO. 25-1472 (ADC-HRV)<br><br>JURY TRIAL DEMANDED |

**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AS TO BIO-MEDICAL APPLICATIONS OF ARECIBO, INC. AND MEMORANDUM OF LAW IN SUPPORT**

TO THE HONORABLE COURT:

COMES NOW Codefendant Bio-Medical Applications of Arecibo, Inc. ("BMA Arecibo"), through undersigned counsel, and respectfully moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice all claims asserted against it in Plaintiff's First Amended Complaint, Docket No. 57. In support, BMA Arecibo states:

## I. INTRODUCTION

This motion presents a defendant-specific pleading question: whether the First Amended Complaint (the "Complaint") alleges facts plausibly connecting BMA Arecibo to the misconduct for which Plaintiff seeks relief. Plaintiff describes the termination of dialysis treatment at Fresenius Aguadilla Clinic, retaliation for his grievances, and subsequent refusals of outpatient treatment in other facilities. These serious allegations must be assessed as to each defendant. Naming BMA Arecibo within a collective accusation, without supporting facts, does not establish its participation.

The allegations specific to BMA Arecibo are limited. Paragraph 27 identifies its corporate status and resident agent; Paragraph 56 includes it among the "Fresenius Defendants" allegedly engaged in a campaign to deny Plaintiff dialysis. Paragraph 62, however, alleges that "Fresenius in Arecibo" initially accepted Plaintiff and provided recurring outpatient dialysis before he transferred to Isabela and later

Aguadilla. That history describes care, not misconduct, and the collective allegation does not explain BMA Arecibo's role in the alleged campaign.

The Complaint also identifies Dr. César Rivera-Reverón as a contracted nephrologist for Fresenius clinics in Arecibo and Dr. Ángel F. Delgado-Garrastegui as their medical director, and attributes treatment refusals to them. ¶¶ 39, 42, 93, 114. Those allegations warrant consideration, but they do not identify which challenged decision either physician made on BMA Arecibo's behalf or connect that decision to functions performed for this corporation rather than another facility. The essential link between the physicians' alleged misconduct and BMA Arecibo's direct or vicarious liability thus remains unstated.

That missing connection runs through the asserted theories of recovery. Count I names "Private Facility Defendants" that do not expressly include BMA Arecibo, while Count IV targets Hospital Susoni and the "Responsible Doe Defendants." Counts II and III identify no discriminatory denial attributable to BMA Arecibo; Counts V and VI supply no defendant-specific facts showing its participation in retaliation or interference, or a breach of duty causing Plaintiff's injuries. Count VII alleges employment and agency collectively without tying the challenged conduct to functions performed for BMA Arecibo. For the reasons developed below, the Complaint does not plausibly establish this corporation's liability, and the claims against it should be dismissed with prejudice under Rule 12(b)(6).

## II. RELEVANT ALLEGATIONS

Plaintiff alleges that he has end-stage renal disease and requires recurring hemodialysis. "Fresenius in Arecibo" initially provided outpatient dialysis; he later transferred to Isabela to be closer to his home in Moca, then to Aguadilla after his relationship with Dr. Da Silva deteriorated. ¶¶ 60–62. Paragraph 27 identifies BMA Arecibo as a Delaware corporation, and Paragraph 56 includes it among the "Fresenius Defendants" collectively accused of conspiring to deny treatment. The earlier Arecibo care is not alleged to have involved a wrongful discharge or refusal.

The discharge allegations concern Fresenius Aguadilla. Plaintiff alleges that he filed grievances and contacted Medicare, Medicaid, and a Fresenius executive about conditions there. In December 2024, nurse Carmen López allegedly warned him that Dr. Da Silva and Clinical Director Letisia González intended to cancel his services in retaliation for those contacts and that no facility in Puerto Rico would thereafter treat him. She allegedly repeated the warning in January 2025. Fresenius Aguadilla later issued an immediate involuntary discharge letter dated March 19, 2025. ¶¶ 64–70, 80–82.

After the discharge, Plaintiff alleges that physicians and facilities repeatedly refused to accept him for stable outpatient dialysis. He attributes the dissemination of adverse information to Dr. Da Silva or persons acting with him, relying on a reported call "from Aguadilla," statements referring to Dr. Da Silva, and subsequent treatment refusals. He acknowledges that the precise participants, recipients, timing, and content of the communications remain unknown. ¶¶ 88–95. The Complaint also identifies Dr. César Rivera-Reverón as a contracted nephrologist for Fresenius clinics in Arecibo and Dr. Ángel F. Delgado-Garrastegui as their medical director and alleges that those physicians refused outpatient services and later declined to provide or approve emergency hemodialysis at Hospital Susoni. ¶¶ 39, 42, 93, 114.

The distinction between those individuals and BMA Arecibo is central to this motion. Although Paragraph 56 includes the corporation in the alleged collective campaign, the narrative identifies no instruction, communication, discharge decision, or treatment refusal made by it. Nor does it specify which challenged act either Arecibo-affiliated physician performed on its behalf. The earlier treatment and clinic affiliations provide context but leave the connection to corporate liability unexplained. ¶¶ 27, 39, 42, 56, 62, 93–95, 114.

## III. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. In evaluating a motion to dismiss under this Rule, the Court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s]

all reasonable inferences therefrom in the pleader's favor." Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011). "The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011).

The inquiry under Rule 12(b)(6) concerns the legal sufficiency of the operative complaint and is facial rather than factual. A complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The sufficiency of a complaint is governed by two well-established principles. First, although the Court must accept as true all well-pleaded factual allegations, it is not required to accept legal conclusions, unsupported inferences, or conclusory allegations couched as facts. Iqbal, 556 U.S. at 679. As the Supreme Court made clear, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Romero-Hernández v. Matías-De León, 796 F. Supp. 2d 290, 292 (D.P.R. 2011).

Second, the Court determines whether the remaining well-pleaded facts, considered in the context of the complaint as a whole, plausibly establish an entitlement to relief. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." Romero-Hernández, 796 F. Supp. 2d at 292; see also Caro-Bonet v. Lotus Mgmt., LLC, 195 F. Supp. 3d 428, 430 (2016) (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)). The appropriate inquiry "in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to

relief plausible.'" Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 n.14, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A claim is plausible only when the alleged facts permit the Court to draw a reasonable inference that the particular defendant is liable for the misconduct alleged; facts merely consistent with liability do not cross the line from possibility to plausibility. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-557). Determining plausibility is a "context-specific task" requiring the Court to draw on its "judicial experience and common sense." Id. at 679. Thus, where the well-pleaded facts permit no more than the mere possibility of misconduct, the complaint has alleged, but has not shown, that the pleader is entitled to relief. Id.; Fed. R. Civ. P. 8(a)(2).

Fed. R. Civ. P. 8(a)(2) ("Rule 8") requires a "short and plain statement of the claim" showing entitlement to relief and providing the defendant fair notice of the claim and the grounds on which it rests. Although Rule 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). See also Difronzo v. City of Somerville, No. 25-1210, 2026 WL 2824054 (1st Cir. 2026). Accordingly, to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570 (2007)). A complaint may not proceed based on conclusory allegations, speculation, or the hope that discovery will uncover a viable claim. Id. at 679.

The Court must also assess the sufficiency of the allegations as to the particular defendant seeking dismissal. Therefore, a complaint naming multiple defendants cannot satisfy Rule 8 by alleging collective misconduct without facts plausibly connecting each defendant to the challenged conduct. "[S]ave under special conditions, an adequate complaint must include not only a plausible claim but also a plausible defendant." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594 (1st Cir. 2011). Accordingly, the pleading must provide fair notice through at least minimal facts identifying who did

what to whom, when, and where. Ocasio-Hernández, 640 F.3d at 12; Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004).

The First Circuit has affirmed dismissal where a complaint relied on assumptions arising from defendants' positions but alleged no interactions or other facts connecting those defendants to the asserted deprivation. Ocasio-Hernández, 640 F.3d at 7. Likewise, although coordinated conduct may sometimes be alleged collectively, collective pleading is sufficient only when the complaint provides enough detail to make it plausible that the grouped defendants actually engaged in the same identified conduct. Ramhit v. Luu, 799 F. Supp. 3d 1, 8 (D. Mass. 2025). Applied here, collective labels and conclusory assertions concerning the "Fresenius Defendants" cannot substitute for well-pleaded facts permitting a reasonable inference that BMA Arecibo itself engaged in actionable conduct. The Complaint must allege facts connecting BMA Arecibo, not merely some other person or entity bearing the Fresenius name, to each challenged act, communication, agreement, or decision.

Relatedly, corporate separateness limits the inference that may be drawn from a shared name or affiliation. Treating separately incorporated entities as interchangeable on that basis alone would disregard their distinct legal identities. Under federal law, common ownership and overlapping officers or directors do not, without more, eliminate separate corporate identity. United States v. Bestfoods, 524 U.S. 51, 69 (1998); De Castro v. Sanifill, Inc., 198 F.3d 282, 283 (1st. Cir. 1999). Puerto Rico law likewise preserves a corporation's legal personality as separate from its stockholders, officers and affiliated entities. Santiago Nieves v. Braulio Agosto Motors Inc., 197 D.P.R. 369, 2017 WL 1043189 (2017). Disregarding that separateness requires more than ownership, corporate affiliation, or a shared trade name. DACO v. Alturas de Fla. Dev. Corp., 132 D.P.R. 905, 1993 P.R. Sup. Lexis 339 Eng. Offic. Trans.

Taken together, these principles require Plaintiff to plead nonconclusory facts that plausibly connect BMA Arecibo, as a distinct corporate entity, to the alleged misconduct. The First Amended Complaint does not meet said requirement. Its collective labels and unsupported assertions identify no

act, omission, communication, agreement, or decision attributable to BMA Arecibo and therefore fail to state a plausible claim against it under Rules 8(a)(2) and 12(b)(6).

## IV. ARGUMENT

### A. The Complaint Alleges No Action or Omission Attributable to BMA Arecibo

The threshold defect is the absence of facts connecting BMA Arecibo to the challenged conduct. Its corporate identity and inclusion among the "Fresenius Defendants" do not establish its participation in the alleged wrongdoing. Specifically, the Complaint supplies no defendant-specific facts showing that BMA Arecibo:

1. Owned, leased, or operated Fresenius Aguadilla;
2. Employed or supervised Dr. Da Silva, González, or anyone involved in Plaintiff's discharge;
3. Made, approved, or participated in the March 2025 discharge decision;
4. Received Plaintiff's grievances or knew of his contacts with Medicare or Medicaid;
5. Communicated with any physician or facility concerning Plaintiff;
6. Refused a request by Plaintiff for outpatient dialysis;
7. Disseminated adverse information about Plaintiff;
8. Participated in an agreement to deny Plaintiff treatment; or
9. Committed an act or omission that caused any alleged injury.

The narrative instead attributes the discharge plan to Dr. Da Silva and González, the termination of care to Fresenius Aguadilla, and the dissemination of adverse information to Dr. Da Silva or persons allegedly acting with him.

Although the Complaint identifies Dr. César Rivera-Reverón and Dr. Ángel F. Delgado-Garrastegui as physicians affiliated with Fresenius clinics in Arecibo, it never alleges that the challenged decisions were made on behalf of BMA Arecibo, pursuant to any BMA Arecibo policy, at a BMA Arecibo facility, or within the scope of duties performed for that corporation. The Complaint therefore asks the Court to assume that because a physician maintained an affiliation with a Fresenius clinic in

Arecibo, conduct later attributed to that physician must necessarily be attributable to BMA Arecibo. Twombly and Iqbal do not permit such inferential leaps.

Nor does the collective conspiracy allegation cure that deficiency. Plaintiff expressly acknowledges that the precise participants, recipients, timing, and content of the alleged communications remain unknown. The Complaint therefore offers no factual basis from which the Court could reasonably infer that BMA Arecibo knowingly participated in any agreement, communication, or coordinated effort to deny Plaintiff treatment. Conduct merely consistent with liability does not satisfy the plausibility standard, and an unsupported assertion that BMA Arecibo joined an unspecified agreement at some unidentified point in time cannot substitute for well-pleaded facts.

**B. The Only BMA Arecibo Specific Allegation Involves Treatment, not Discrimination**

Count I is expressly asserted against the "Private Facility Defendants": Fresenius Aguadilla, Atlantis Health Care Group PR, Inc., Hospital Susoni, Nefrólogos Asociados del Oeste, and unidentified entities owning, leasing, or operating a private place of public accommodation. That definition does not expressly include BMA Arecibo. Title III of the Americans with Disabilities Act ("ADA") prohibits disability discrimination in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation by a person who owns, leases, leases to, or operates it. 42 U.S.C. § 12182.

The allegations concerning Arecibo further undermine, rather than support, Count I. The only defendant-specific allegations involving the Arecibo facility state that Plaintiff was accepted as a patient there and received outpatient dialysis services before voluntarily transferring to other clinics. The Complaint identifies treatment, not discrimination. None of the alleged misconduct giving rise to the ADA claim is alleged to have occurred at the Arecibo facility or as the result of any action taken by BMA Arecibo. Thus, even accepting every well-pleaded factual allegation as true, the Complaint fails to allege that BMA Arecibo denied Plaintiff equal access to any service, facility, privilege, or accommodation.

Even if Count I encompassed BMA Arecibo, the Complaint does not allege that it owned, leased, leased to, or operated a facility at which Plaintiff was denied treatment, or that it denied him equal access to any goods, services, facilities, privileges, advantages, or accommodations. Count I therefore is not asserted against BMA Arecibo and, alternatively, fails to state a Title III claim against it.

### C. Counts II and III Do Not State a Disability-Discrimination Claim Against BMA Arecibo

Counts II and III invoke broader categories: the "Federally Funded Entity Defendants" and the "Covered Health Program Defendants," respectively. The Complaint alleges, upon information and belief, that these entities receive Medicare, Medicaid, or other forms of federal financial assistance.

Section 504 applies to qualifying programs or activities receiving federal financial assistance, including certain private organizations principally engaged in providing healthcare. 29 U.S.C. § 794. Section 1557 prohibits disability discrimination in a health program or activity receiving federal financial assistance and incorporates the enforcement mechanisms available under Section 504. 42 U.S.C. § 18116.

A disability-discrimination claim under Section 504, as incorporated through Section 1557, requires allegations that the plaintiff is disabled, sought services from a federally funded entity, was otherwise qualified to receive those services, and was denied them solely because of his disability. Holland v. Elevance Health, Inc., 171 F.4th 126, 131 (1st Cir. 2026).

Even assuming, for purposes of this motion, that BMA Arecibo receives federal financial assistance and falls within the scope of Sections 504 and 1557, statutory coverage alone does not establish liability. Plaintiff must still plead facts showing that BMA Arecibo engaged in discriminatory conduct. The Complaint does not do so.

The Complaint identifies no program, service, or activity of BMA Arecibo from which Plaintiff sought treatment during the events at issue and from which he was denied services because of his disability. It does not allege that Plaintiff sought admission to an Arecibo clinic and was rejected, that

BMA Arecibo personnel evaluated and denied him treatment, or that BMA Arecibo implemented or enforced a policy that prevented him from receiving dialysis. Nor does it identify any communication, recommendation, instruction, or decision by BMA Arecibo that contributed to the alleged denial of care.

To the contrary, the only allegations specifically involving the Arecibo clinic concern Plaintiff's prior acceptance and treatment there. Those allegations do not support a plausible inference that BMA Arecibo later discriminated against Plaintiff on the basis of disability. Thus, while federal funding may establish statutory coverage, it does not establish discrimination. Because the Complaint fails to identify any discriminatory denial attributable to BMA Arecibo, Counts II and III should be dismissed.

**D. Count IV Is Not Asserted Against BMA Arecibo**

Count IV, by contrast, expressly targets Hospital Susoni and the “Responsible Doe Defendants.” It concerns allegations that hospital personnel threatened to bar Plaintiff from future admission if he attended court proceedings or requested discharge to manage his legal affairs.

The Complaint attributes no comparable conduct to BMA Arecibo and alleges neither its knowledge of Plaintiff’s protected activity nor any threat, coercion, or interference by it. Count IV therefore is not asserted against BMA Arecibo and states no claim against it.

**E. Count V Does Not State a Claim Against BMA Arecibo**

Count V alleges that Plaintiff was discharged in retaliation for protected grievances and that adverse information was later shared with other providers to impede his access to outpatient dialysis treatment. The allegations supporting those theories, however, concern conduct purportedly undertaken by Dr. Da Silva, Letisia González, Fresenius Aguadilla, or individuals allegedly acting with them. Indeed, the Complaint repeatedly identifies the Aguadilla facility as the source of both the discharge decision and the alleged retaliatory conduct.

Although the Complaint contains detailed allegations regarding Plaintiff's discharge and the subsequent alleged dissemination of information about him, it alleges no facts plausibly connecting either course of conduct to BMA Arecibo. Nor does it identify any factual basis from which the Court could

reasonably infer that BMA Arecibo knowingly joined the alleged effort to interfere with Plaintiff's access to treatment. Rather, Plaintiff relies on collective labels and conclusory assertions without identifying who acted on BMA Arecibo's behalf, when it allegedly became involved, or what actions it purportedly undertook in furtherance of the scheme. Such allegations are insufficient under Twombly and Iqbal.

Count V fails for an additional reason. Under Puerto Rico law, a claim for tortious interference requires an existing contract with which a third party interfered; a mere expectancy or advantageous business relationship is insufficient. The claim further requires intentional conduct undertaken with knowledge of the contract, resulting damages, and a causal connection between the interference and the alleged harm. Gen. Office Prods. Corp. v. A. M. Capen's Sons, 115 P.R. Dec. 553, 734 (1984).

Here, the Complaint identifies no contract with which BMA Arecibo allegedly interfered, no facts suggesting that BMA Arecibo knew of such a contract, and no intentional conduct by BMA Arecibo that induced or caused its breach. The alleged treatment refusals do not cure those deficiencies. Absent factual allegations connecting BMA Arecibo to a specific contract or any act of interference, Count V fails to state a plausible claim for relief.

### F. Count VI Fails to Allege a Wrongful Act, Duty, or Causal Connection Involving BMA Arecibo

Count VI alleges negligence and professional negligence against the "Healthcare Defendants." It encompasses catheter-related delays, interrupted dialysis, the Aguadilla discharge, failures in placement and record transmission, treatment refusals, and events at Hospital Susoni. Again, the question is which alleged breach is attributable to BMA Arecibo.

Under Puerto Rico law, a tort claim requires a culpable or negligent act or omission, a causal relationship between that conduct and the alleged injury, and actual damage. Inmobiliaria Baleares, LLC v. Benabe González, 2024 TSPR 112, 214 P.R. Dec. 1109 Liability based on an omission also requires a legal duty to act. Monllor Arzola v. Conjugal P'ship Constituted by Luis González Ortiz, 138 P.R. Dec. 600 (1995)

The Complaint supplies no defendant-specific facts establishing any of those elements as to BMA Arecibo. The Complaint contains no factual allegations that BMA Arecibo participated in, approved, or otherwise contributed to the discharge decision or the subsequent communications on which Plaintiff's retaliation theory depends. The pleading similarly fails to identify any duty owed by BMA Arecibo that is relevant to the challenged events or any breach of such duty.

To the extent Plaintiff relies on allegations concerning Dr. Rivera-Reverón or Dr. Delgado-Garrastegui, those allegations do not bridge the gap between individual conduct and corporate liability. The Complaint does not allege that the challenged decisions were made on behalf of BMA Arecibo or in connection with functions performed for that corporation. A claim against an individual healthcare provider does not automatically become a claim against every corporation with which that provider may have maintained a professional affiliation.

The earlier treatment Plaintiff received at "Fresenius in Arecibo" likewise does not cure the pleading deficiency. No negligence is alleged during that treatment. Nor does the Complaint explain how that earlier treatment is connected to the later discharge from Fresenius Aguadilla, the alleged subsequent outpatient refusals, or the events alleged to have occurred at Hospital Susoni. Absent factual allegations linking BMA Arecibo to a specific breach of duty and a resulting injury, Count VI fails to state a plausible claim for relief.

### G. Count VII Does Not State a Vicarious-Liability Claim Against BMA Arecibo

Count VII seeks to impose vicarious liability on the undefined “Institutional Defendants” for conduct by physicians and other personnel. Its agency-attribution theory is distinct from the corporate-separateness issue discussed above: corporate affiliation alone does not make BMA Arecibo responsible for another entity’s conduct, but separate corporate identity does not foreclose liability for acts properly attributable to its own employees or agents. The question is whether the Complaint plausibly connects the physicians’ alleged wrongdoing to their employment, agency, or assigned functions for BMA Arecibo.

Count VII ultimately assumes the very fact it must plead. It assumes that because certain physicians allegedly committed wrongful acts and maintained professional affiliations with Fresenius clinics in Arecibo, those acts must have been performed within the scope of duties owed to BMA Arecibo. The Complaint supplies no factual allegations supporting that conclusion. It does not identify when the challenged conduct occurred on behalf of BMA Arecibo, where it occurred, what authority was being exercised for BMA Arecibo, or how the alleged acts furthered any BMA Arecibo function.

Physician affiliation alone does not plausibly establish that the challenged conduct was undertaken on BMA Arecibo's behalf. Without factual allegations identifying the capacity in which the physicians acted and connecting the challenged conduct to functions performed for this corporation, the theory of vicarious liability remains speculative rather than plausible. Count VII therefore fails to state a claim against BMA Arecibo. Because Plaintiff has already amended his complaint once and still alleges no facts connecting BMA Arecibo to the challenged conduct, dismissal should be with prejudice.

## V. CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Codefendant Bio-Medical Applications of Arecibo respectfully requests that the Court:

(i) GRANT this Motion;

(ii) DISMISS WITH PREJUDICE all claims asserted against Bio-Medical Applications of Arecibo, Inc. in the First Amended Complaint; and

(iii) GRANT such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this same date, a true and correct copy of the foregoing was filed through the Court's CM/ECF system, which will transmit notice of the filing to all counsel of record registered in the system.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 10 day of November 2026.

**MCCONNELL VALDÉS LLC**
***Attorneys for Bio-Medical Applications of Arecibo***
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: (787) 759-9292
Facsimile: (787) 759-8282

*s/ Antonio A. Arias-Larcada*
ANTONIO A. ARIAS-LARCADA
USDC-PR No. 204906
aaa@mcvpr.com

*s/ Lourdes A. Robles-Torres*
LOURDES A. ROBLES-TORRES
USDC-PR No. 302602
lar@mcvpr.com